*MHN*

In The
United States District Court
Northern District of Illinois

FILED
AUG 0 7 2008
AUG 07 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*LCW*

U.S. ex rel. Richard Neville,
        Petitioner,

-vs-

Roger E. Walker, Jr.;
Jorge Montes; Derwin
L. Ryker,
        Respondents

08CV4458
JUDGE MANNING
MAGISTRATE JUDGE DENLOW

Memorandum of Law In Support of Petition For Habeas Corpus

NOW COMES Richard Neville, petitioner, pro se, in support of his petition for habeas corpus and respectfully states as follows:

Parties

1. Petitioner, Richard Neville, is unlawfully incarcerated at Lawrence Correctional Center, R.R. #2, Box 31, Sumner, IL. 62466,

2. Respondent, Roger E. Walker, Jr., is the Director of the

1

Illinois Department of Corrections, with an office located at 1301 Concordia Ct., Springfield, IL. 62701.

3. Respondent, Jorge Montes, is the Chairman of the Prisoner Review Board, with an office located at 319 E. Madison, Suite A, Springfield, IL. 62701.

4. Respondent, Derwin L. Ryker, is the Warden at Lawrence Correctional Center, with an office located at R.R. #2, Box 36, Sumner, IL. 62466.

## Background

On August 31, 2006, petitioner completed the concurrent, determinate sentences imposed by the Cook County Circuit Court in case #'s 99 CR 3399 and 99 CR 3400. However, respondent Montes has, and continues to, retroactively apply new conditions to petitioner's statutory term of supervised release and respondent Walker, despite the lack of statutory authority, has, and continues to, "determine" that petitioner cannot comply with the new conditions and has, and continues to, order respondent Ryker to refuse to release petitioner from incarceration.

## Exhaustion of State Remedies

On September 28, 2006, petitioner filed complaint for mandamus

in the Sangamon County Circuit Court, in case # 06-MR-543, seeking enforcement of his right to release from incarceration and his right to serve his term of supervised release under only those conditions which were in effect on the date his crime was committed. On March 6, 2007, on respondents' motion, the circuit court dismissed the complaint. On March 9, 2007, petitioner filed appeal in the Illinois Appellate Court (4th Dist.) in case #4-07-0226. On November 16, 2007, in a published opinion, the appellate court affirmed the dismissal. On January 3, 2008, the Illinois Supreme Court accepted petitioner's petition for leave to appeal as timely filed in case # 105827. However, the Illinois Supreme Court has, and continues to, refuse to rule on said petition in an unreasonable and unexplained exploitation of the exhaustion requirements of 28 U.S.C. § 2254.

Petitioner does not challenge the judgment or sentence of the Cook County Circuit Court in his criminal case. The judgment has been satisfied as the sentence has been completed. Petitioner challenges only respondents' unconstitutional acts which have, and continue to, prolong his incarceration.

Petitioner now files the instant Memorandum of Law, arguing in three parts: (1), the exploitation of the exhaustion requirements of § 2254 by the indefinite delay of the Illinois Supreme Court has rendered any relief in that Court unavailable, and therefore,

petitioner has completely and correctly exhausted his State avenues of relief; (2) petitioner is incarcerated in violation of the Due Process Clause of the Fourteenth Amendment and the the decision of the State court in this issue is contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; and (3) petitioner is incarcerated in violation of the Ex Post Facto Clause and the decision of the State court in this issue is contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

## Argument

### I. Petitioner Has Completely and Correctly Exhausted Under §2254

In _Woodford v. Ngo_, 126 S.Ct. 2378 (2006), the Court compared the exhaustion requirements of the ~~PRLA~~ PLRA to those of the federal habeas corpus law. _id._, 126 S.Ct. at 2386, citing 28 U.S.C. §2254 (b)(1), (c); and quoting _O'Sullivan v. Boerckel_, 526 U.S. 838, 845 (1999).

In _Lewis v. Washington_, 300 F.3d 829 (7th Cir. 2002), the Seventh Circuit joined the Eighth and Fifth Circuits in holding that, when prison officials fail to respond to inmate grievances, the administrative remedy at that particular level is deemed

exhausted because it has been rendered "unavailable." The court felt that this ruling is necessary to prevent the exploitation of the exhaustion requirement through indefinite delay in responding. id., 300 F.3d at 833.

In the instant case, the Illinois Supreme Court is also exploiting the exhaustion requirement by indefinite delay.

On January 3, 2008, the Illinois Supreme Court accepted as timely filed, petitioner's petition for leave to appeal. However, despite petitioner's entreaties, that Court has, and continues to, refuse to make a ruling on the petition! On March 19, 2009, petitioner's term of supervised release will expire and any further argument will become moot. As it takes months to properly move an appeal through the Illinois Supreme Court once leave to proceed has been granted, it becomes obvious that that Court is purposefully delaying further proceedings specifically in order to render the case moot!

The Court in O'Sullivan held that the petitioner need only give the highest court in the state having jurisdiction, a fair OPPORTUNITY to act on his claim. id., 526 U.S., at 845. emphasis added.

Considering that the majority of petitions for leave to appeal are ruled upon within 60 days, petitioner has, most

5

certainly, given that Court sufficient OPPORTUNITY to act on his claim. Moreover, as the Lewis court held, the exploitation of the exhaustion requirement by intentional delay renders relief unavailable. id, 300 F.3d at 833. Finally, the Woodford Court correctly and logically held that the exhaustion requirements of the PLRA and the federal habeas corpus law serve the same purpose. id., 126 S.Ct., at 2386.

Therefore, it logically follows that the Illinois Supreme Court's exploitation of the exhaustion requirements in §2254 has rendered any relief in that Court unavailable, and that petitioner has completely and correctly exhausted his state avenues of relief.

## II. Petitioner Is Incarcerated In Violation Of Due Process

The petitioner has completed his determinate sentence. Therefore, he has both a procedural (statutory) and substantive Due Process right to release from incarceration to serve his term of supervised release outside of prison. see S.H.A. 730 ILCS 5/3-3-3(c)(West 2006). see also United States ex rel. Houston v. Warden, Stateville Correctional Center, 635 F.2d 656, 657 (7th Cir. 1980).

In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979), the Court reasoned that there is no constitutional right to release from incarceration BEFORE the completion of a valid

sentence, *id.*, 442 U.S., at 7, emphasis added. Implicit in this holding is the inference that there IS a constitutional right to release from incarceration AFTER the valid sentence has been completed. Indeed, freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). A person's core liberty is always implicated when he is confined in prison. The State's act of restraining his freedom through incarceration is the very "deprivation of liberty" which triggers the protections of the Due Process Clause. *Reno v. Flores*, 507 U.S. 292, 315-16 (1993).

Respondents argued below that, if released, petitioner "would be" in immediate violation of the "terms" of his supervised release. See *Neville v. Walker*, 878 N.E. 2d 831, 832 (Ill. App. 4 Dist. 2007). Nevertheless, it is clear that 730 ILCS 5/3-3-3(c) protects and effectuates petitioner's fundamental right to liberty upon completion of his determinate sentence, and respondents' refusal to obey the clear, unambiguous provisions of section 3-3-3(c) injures this fundamental right. Therefore, it is well established that the provisions of section 3-3-3 (c) are mandatory. see *Lexecon v. Milberg Weiss Bershad Hynes*, 523 U.S. 26, 35 (1998); and *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511 (1871).

Nor can there be any doubt as to the meaning of "release" in the context of section 3-3-3(c). It plainly means "to be freed

from confinement." <u>United States v. Johnson</u>, 120 S.Ct. 1114, 1117 (2000). Indeed, the <u>Johnson</u> Court determined that supervised release can NEVER be served while incarcerated! <u>ibid</u>. emphasis added.

Furthermore, if, as respondents insist, petitioner was not released because of a possible violation of supervised release, they must abide by the Court's decision in <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). There, the Court determined that, because the liberty enjoyed by parolees is "valuable" and its termination would inflict a "grievous loss," the decision to revoke parole must be made in conformity with due process standards. <u>id.</u>, 408 U.S., at 482. By "due process" is meant, one which, following the forms of law, is appropriate to the case, and just to the parties affected. <u>Joint Anti-Fascist Refugee Committee v. McGrath</u>, 341 U.S. 123, 162 (1951)(Frankfurter, J., concurring). This, <u>Morrissey</u> held, requires a revokation hearing before "a neutral and detatched body," where it MUST be determined IF, in fact, the parolee committed any act which would constitute a violation of the conditions of parole. <u>id.</u>, 408 U.S., at 487-89. The Court, in <u>Greenholtz</u>, re-emphasized the holding that the determination to revoke parole actually involves two seperate decisions: did the parolee commit a violation; and if so, does that violation warrant revokation? <u>id.</u>, 442 U.S., at 9, citing <u>Morrissey</u>, 408 U.S., at 487-89. While <u>Morrissey</u> dealt specifically

8

with parole, both the Illinois and United States Supreme Courts have determined that supervised release is "analogous" to parole. People v. Moss, 842 N.E.2d 669, 670 (Ill. 2005); Johnson v. United States, 120 S.Ct. 1795, 1806 (2000).

In the instant case, on October 12, 2006, the Prisoner Review Board determined that petitioner had not violated any condition of supervised release. Nevertheless, respondent Walker and the Department of Corrections have, and continue to, refuse to release petitioner because they have "determined" that if released, petitioner "would be" in violation of the "terms" of supervised release; see Neville, 878 N.E.2d at 832, see also Neville, et al., v. Walker, 5-07-0249, slip op., at 2. This "determination" is not only incredible, it is void!

If the State grants a prisoner a right or expectation that adverse action will not be taken against him except on the OCCURRENCE of specific behavior, the determination of whether such behavior has in fact OCCURRED becomes critical, and the minimum due process procedures appropriate to the circumstances MUST BE OBSERVED! Vitek v. Jones, 445 U.S. 480, 490-91 (1980)(emphasis added), citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974). compare Morrissey, 408 U.S., at 487-89. Moreover, an "appropriate" governmental "determination" MUST be the result of a process of reasoning. It CANNOT be, as here, an arbitrary fiat

contrary to the known facts. Joint Anti-Fascist Refugee
Committee, 341 U.S., at 140.


Additionally, it is well established in Illinois that only
the Prisoner Review Board has the statutory authority to
determine whether petitioner has violated any condition of
supervised release. See S.H.A. 730 ILCS 5/3-3-1(a)(5)(west 2006).
Equally established is that respondent Walker and the Department
of Corrections are administrative agencies and employees
thereof. They have no general or common law powers. Chicago
v. Fair Employment Practices Comm'n, 65 Ill.2d 108, 113 (1976).
An agency's powers are limited to those granted by the
legislature, so that any action taken must be specifically
authorized by statute. Business & Professional People for
the Public Interest v. Ill. Commerce Comm'n, 136 Ill.2d 192,
243 (1989). Consequently, when an agency acts outside its
specific statutory authority, it acts without "jurisdiction."
id., 136 Ill.2d at 243. Although the term "jurisdiction" is not
strictly applicable to an administrative body, the Illinois
Supreme Court has held that the term may be employed to
designate the authority of an administrative body to act.
ibid. Where, as clearly happened here, an agency enters
a decision that it has no statutory power to enter, the
decision is void! id., 136 Ill.2d at 244.


The last reasoned decision of the State court contained no

10

specific ruling on this particular issue. Instead, the court simply repeated the specious and void decision of respondents that, if released petitioner would be in violation of supervised release, Neville, 878 N.E.2d at 832. Nevertheless, this affirmance without opinion is contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States in the jurisprudence cited herein above.

III Petitioner Is Incarcerated In Violation Of Ex Post Facto Clause

Respondent Montes has retroactively applied new conditions to petitioners term of supervised release and the retroactive application as well as the new conditions themselves, are prolonging petitioner's incarceration.

In this case, the State court determined that the Ex Post Facto Clause had not been violated. Neville, 878 N.E.2d at 834-35. However, the court's decision is both erroneous and inadequate.

It is erroneous because it is based upon the same specious comparisons of conditions of supervised release to the discretionary guidelines used to determine eligibility and suitability for early release on parole and to sex offender notification and registration laws which was previously considered and specifically rejected by the Supreme Court in Smith v. Doe, 123 S.Ct. 1140, 1152 (2003). In fact, the State court cites to Smith in support of its inane

11

determination". Neville, 878 N.E.2d at 834-35.

The State court's decision is inadequate because that court specifically and intentionally refuses to apply the analytical framework long established by Garner v. Jones, 529 U.S. 244 (2000).

In Garner, the Court recognized that the discretion of the agency making parole determinations must be taken into consideration. id., 529 U.S., at 250. However, Garner specifically held that the presence of discretion does not displace the protections of the Ex Post Facto Clause. id., 529 U.S., at 253. The question, Garner holds, is how the agency exercises its discretion in actual practice and whether the retroactive application of the new law will create a significant risk of increasing or prolonging petitioner's incarceration. id., 529 U.S., at 251. Garner also established two methods for demonstrating significant risk. id., 529 U.S., at 255. Both methods, applied here, go beyond establishing significant risk. They actually demonstrate prolonged incarceration.

First, the new conditions retroactively applied to petitioner's term of supervised release include electronic home detention and residing only at a Department approved residence. see S.H.A. 730 ILCS 5/3-3-7(b-1)(1),(6) (West 2007).

Electronic home detention has long been declared to constitute physical confinement. The residence, as part of the electronic

system has equally been long held to constitute a penal
institution. People v. Moncrief, 659 N.E. 2d 106, 108 (Ill. App. 2 Dist.
1995), citing People v. Moss, 274 Ill. App. 3d 77, 78-81 (1995). Indeed,
the Moncrief court determined that persons serving electronic home
detention as a condition of supervised release were committed to
the Department of Corrections and were residing in a penal institution!
This is the paradigmatic definition of incarceration. compare Garner,
529 U.S., at 251, 255.

Next, the respondents readily assert and the State court agrees
that petitioner, due to respondents' "determination" that he
cannot comply with the retroactively applied new conditions, is
and has been, incarcerated since August 31, 2006! compare Garner,
529 U.S., at 251, 255.

In this issue, the decision of the State court is contrary to, or
an unreasonable application of, clearly established federal law
as determined by the Supreme Court of the United States in
Garner v. Jones.

## Conclusion

In the case at bar, it is clear that the petitioner has completely
and correctly exhausted his state avenues of relief; he is
incarcerated in violation of the Constitution; and the last, reasoned
decision of the State court is contrary to, or an unreasonable

13

application of clearly established federal law as determined by the Supreme Court of the United States. Habeas corpus should be granted.

Respectfully submitted,

Richard Neville, pro se
K78239, R.R.#2, Box 31,
Sumner, IL. 62466,

State of Illinois )
                  ) ss
County of Lawrence )

I, Richard Neville, being first duly sworn upon oath, do here by depose and state that I am the petitioner in the above entitled cause, that I have read the foregoing Memorandum of Law and that all statements therein are true and correct in substance and in fact.

/s/ 

Subscribed and sworn to before me this 1st day of August, 2008

/s/ Sharon L. McCorkle
     Notary Public

"OFFICIAL SEAL"
Sharon L. McCorkle
Notary Public, State of Illinois
My Commission Exp. 07/14/2009

14