# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. RICHARD NEVILLE, Petitioner, | ) ) ) ) | |
| v. | ) ) | 08 C 4458 |
| LEE RYKER, Warden, Lawrence Correctional Center, Respondent. | ) ) ) ) | |

## MEMORANDUM AND ORDER

Petitioner Richard Neville's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Neville's petition is denied.

## I. Background

In 1999, pro se petitioner Richard Neville (prisoner # K78239) was convicted of two counts of predatory criminal sexual assault under 720 ILCS § 5/12-14.1 based on conduct occurring in 1998. He was subsequently sentenced to a nine-year term of imprisonment for each count to run concurrently. *See Neville v. Walker*, No. 4-07-0226 (Ill. App. Ct. Nov. 16, 2007) (unpublished order). On August 31, 2006, Neville's determinate sentence expired and the Prisoner Review Board conditionally transitioned Neville to mandatory supervised release ("MSR"). His mandatory supervised release term expires on September 26, 2009.

Because the Board found that Neville was a sex offender under 730 ILCS § 150/2(b)(1), it imposed electronic monitoring as a special condition of Neville's MSR under 730 ILCS § 5/3-3-7(b-1)(6), which allows the Board to condition release to MSR on submitting to electronic detention. However, even with the assistance of the Department of Corrections, Neville was

unable to find an acceptable host site that would accommodate his need for electronic monitoring.

This left Neville between a rock and a hard place: his term of mandatory supervised release expired on August 31, 2006, yet he could not be released from confinement and transitioned to MSR because that would have put him in immediate violation of the Board's electronic monitoring conditions since he could not be placed at an appropriate host site. Thus, IDOC declined to release Neville, who has been serving his mandatory supervised release in custody, and remains incarcerated at Lawrence Correctional Center in Sumner, Illinois.

Distressed with his continued incarceration, Neville filed a mandamus action in the Circuit Court of Sangamon County in September of 2006, arguing that his continued physical custody violated the ex post facto clauses of the Illinois and United States Constitutions. This argument was "based on his contention that the Board may not condition his MSR on compliance with any sex-offender-specific conditions because [730 ILCS § 5-3-7(b-1)] was added to the statutory scheme governing MSR after the date [Neville] committed his crimes and was sentenced." *See Neville v. Walker*, No. 4-07-0226 at 2.

After the trial court dismissed his complaint, Neville filed a pro se appeal and argued that he was not subject to § 3-3-7(b-1) because it was added to Illinois law after the date he committed his crimes, so retroactively subjecting him to electronic monitoring violated the constitutional prohibition on ex post facto laws. The state appellate court rejected this argument, noting that in 1988, 730 ILCS § 5/3-3-7(a) authorized the Board to set any MSR conditions "necessary to assist the subject in leading a law-abiding life." It then found that this statutory

provision gave the Board broad discretionary authority to set MSR conditions and that electronic monitoring was merely one of many possible MSR conditions.

The Illinois Appellate Court also held that the legislative change did not impose punishment because all of the versions of the MSR statute were meant to protect the public and help defendants reintegrate themselves into society. Citing to *Smith v. Doe*, 538 U.S. 84, 93 (2003), the Illinois Appellate Court then found that because the MSR statute was non-punitive and meant to protect the public as opposed to punish the offender, it is not a punishment and thus is not governed by the ex post facto clause.

Finally, the Illinois Appellate Court concluded that requiring electronic monitoring as a condition of MSR did not extend Neville's sentence because both in 1999 and 2006 (when Neville was first eligible for MSR), an inmate was entitled to MSR only if he or she complied with conditions imposed by the Board. According to the Illinois Appellate Court, the 2006 list of conditions "simply explicitly articulated the [Board's] broad range of discretion which had always existed" and thus did not run afoul of the ex post facto prohibition. *Neville v. Walker*, No. 4-07-0226 at 7, *quoting Heirens v. Mizell*, 729 F.2d 449, 463 (7th Cir. 1984).

On January 3, 2008, Neville filed a petition for leave to appeal to the Illinois Supreme Court ("PLA"), asserting that his ongoing physical custody violated the due process and ex post facto clauses of the United States and Illinois Constitutions. On June 24, 2008, Neville filed a motion for an emergency ruling, arguing that the Illinois Supreme Court was unconstitutionally delaying ruling on his PLA. On July 22, 2008, the Illinois Supreme Court denied the motion for an emergency ruling, and on September 24, 2008, denied leave to appeal.

While waiting for the Illinois Supreme Court to rule on his PLA, Neville signed a federal habeas petition on July 27, 2008. That petition is currently pending before this court. Neville's § 2254 petition is properly before this court as a state prisoner may seek federal habeas relief to remedy the retroactive application of a law that poses a significant risk of increased punishment. *See Garner v. Jones*, 529 U.S. 244, 250 (2000); *Michael v. Ghee*, 498 F.3d 372, 383 (6th Cir. 2007).

## II.     Discussion

Neville contends that his continued incarceration violates the due process and ex post facto clauses.[1] For the following reasons, the court finds that he is not entitled to immediate release.

### A.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court

---

[1] Neville filed his § 2254 petition while his PLA was still pending, and thus also argued that this court should overlook his failure to exhaust his state court remedies. Because the Illinois Supreme Court ruled while the § 2254 petition was being briefed, arguments regarding exhaustion are moot.

confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

### B. Due Process

At the trial court level, Neville's mandamus petition focused on the ex post facto clause and mentioned the due process clause in passing. *See* Trial Court Brief, Respondent's Ex. A, mandamus petition at 5 ("Defendants' refusal to comply with section 3-3-3(c) and the ex post facto provision has, and continues to, injure the plaintiff in that he is and continues in unlawful incarceration in wilful and wanton violation of the due process; equal protection; and ex post facto clauses of the Illinois and United States Constitutions"). His memorandum in response to the State's motion to dismiss did not raise the issue of due process at all and, instead, focused

exclusively on his ex post facto argument. *See* Ex. A, response to motion to dismiss. Similarly, Neville's appellate brief focused exclusively on his argument that his continued incarceration violated the ex post facto clause. *See* Ex. B. Neville's PLA, however, included an argument based on the due process clause. *See* Ex. F.

A petitioner must present his claims to the Illinois courts, up to and including the Illinois Supreme Court, to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) *Boerckel*, 526 U.S. at 844. This means that his claims must appear not only in a petitioner's PLA but also in his filings with the state trial court and intermediate appellate court. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means that it is procedurally barred); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory").

Because Neville did not include his due process claim at the trial and appellate court levels, his inclusion of this argument in his PLA is not enough to exhaust it. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("Presenting a federal claim for the first time in a petition for discretionary review by a state's highest court will not satisfy the fair presentment requirement"). Accordingly, Neville's due process claim is procedurally barred and may only be considered if Neville can establish either cause for his failure to follow a rule of state procedure

and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Neville failed to properly follow state procedural rules. Nothing in the record before the court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default.

To establish a fundamental miscarriage of justice, Neville must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Neville's § 2254 petition does not rest on a claim of actual innocence, given that he is challenging the imposition of MSR as opposed to his conviction. Thus, the fundamental miscarriage of justice exception is inapplicable. This means that Neville's request for habeas relief based on the due process clause fails.[2]

### C. Ex Post Facto Clause

The ex post facto clause of the United States Constitution provides that, "[n]o…ex post facto law shall be passed." U.S. Const., art. I, § 9, cl. 3. Neville argues that imposition of

---

[2] The court notes that this ruling is based purely on habeas procedural default rules, which are not applicable in cases raising constitutional claims that are brought under 42 U.S.C. § 1983. In the interests of completeness, however, the court notes that there is no general constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Moreover, Illinois has adopted a discretionary parole regime and thus has not created a liberty interest by establishing an entitlement to parole based on certain criteria. *See id.*; *see also Thompson v. Veach*, 501 F.3d 832, 836-37 (7th Cir. 2007) (where a state adopts a completely discretionary parole scheme, the denial of parole cannot violate the due process clause). Thus, regardless of exhaustion, Neville's due process claim would fail on the merits.

electronic monitoring serves to unconstitutionally increase his term of incarceration above and beyond the period of incarceration imposed when he was sentenced.

In response, the respondent contends that the state court's rulings are a reasonable application of Supreme Court ex post facto precedent because Illinois law has consistently given the Board broad discretion to create and impose special conditions on MSR terms to protect the public and rehabilitate offenders so the MSR conditions imposed on Neville are not punitive and thus cannot violate the ex post facto clause. Alternatively, the respondent asserts that even if requiring electronic monitoring imposes an additional punishment, it is not retroactive and thus not actionable under the ex post facto clause. The court agrees with both of these arguments.

1. **Non-Retroactivity**

The court begins with the respondent's fall-back argument: that requiring electronic monitoring in 2006 does not present an ex post facto problem because electronic monitoring was within the scope of the Board's discretion at the time of Neville's crimes. This is, in fact, a threshold issue, because if there is no new requirement, there can be no ex post facto issue. In 2005, 730 ILCS § 5/3-3-7 was amended to specifically authorize electronic monitoring as an MSR condition for sex offenders in Illinois. However, prior to that amendment and before Neville committed his offenses, the Board had discretion to impose "conditions of parole or mandatory supervised release . . . such as the Prisoner Review Board deems necessary to assist the subject in leading a law-abiding life." 730 ILCS § 5/3-3-7(a).

At that time as well as in 2006 and today, the Illinois Administrative Code provided that "[p]ersons released under any form of supervision, mandatory release, mandatory supervised release, statutory parole or parole, are subject to rules of conduct prescribed by the Board and any

special conditions deemed appropriate by the Board in individual cases." 20 Ill. Adm. Code 1610.80. In addition, Illinois' Electronic Home Detention Law, 730 ILCS § 5/5-8A-(1–6), became effective on Jan. 1, 1991, well before Neville committed his crimes. This statute gives the Board discretion to impose electronic monitoring as a special MSR condition. *See* 730 ILCS § 5/5-8A-3(a). It also contains prescriptions about electronic monitoring programs, 730 ILCS § 5/5-8A-4(A), and specifies which offenders may be placed in an early release electronic home detention program and for how long, 730 ILCS § 5/5-8A-3(a)–(e).

The court thus agrees with the respondent that fundamentally, the discretion enjoyed by the Board today is no different than that in effect at the time of Neville's offense. Moreover, there is no indication that the Board would not have required supervised release under the laws existing at the time of Neville's offense. Nevertheless, the current version of 730 ILCS § 5/3-3-7(b-1)(6), which specifically allows the Board to condition release to MSR on submitting to electronic detention, was not on the books in 1998 when Neville committed his offense. Thus, the court will assume for the purposes of Neville's habeas petition that it imposed a retroactive condition and will thus consider whether it violates the ex post facto clause.

    **2.    The Amended Parole Statute Does Not Impose Additional Punishment**

Neville's § 2254 petition rests on his contention that his continued incarceration imposes an additional punishment and thus violates the ex post facto clause. However, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987); *see also Garner v. Jones*, 529 U.S. at 250 ("not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited"); *Prater v. U.S. Parole Com'n*, 802 F.2d 948,

955-56 (7th Cir. 1986) (en banc) ("No one contemplating criminal activity should be encouraged to rely on the practices of judges, prosecutors, prison officials, or parole boards; that is not the sort of reliance that the prohibition against ex post facto laws ought to protect or does protect").

Thus, when considering whether a change in the law violates the ex post facto clause, the "controlling inquiry" is whether the new requirement creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508-09 (1995); *see also Garner v. Jones*, 529 U.S. at 249-50 (the ex post facto clause "bar[s] enactments which, by retroactive operation, increase the punishment for a crime after its commission"); *Smith v. Doe*, 538 U.S. 84, 92 (2003) (sex offender registration and notification act was meant to protect the public and thus was not punitive); *U.S. v. Dixon*, 2008 WL 5273535, Nos. 08-1438 & 08-2008, — F.3d —, at *4 (7th Cir. Dec. 22, 2008) (the ex post facto clause "both enforces the principle that legislation is prospective, whereas punishment – the job assigned by the Constitution to the judicial branch – is retrospective, and gives people a minimal sense of control over their lives by guaranteeing that as long as they avoid an act in the future they can avoid punishment for something they did in the past, which cannot be altered").

Whether a statute imposes punishment is a question of legislative intent. *Smith v. Doe*, 538 U.S. at 92. If the legislature's stated goal is anything other than punishment, the statute imposes a civil penalty and cannot support an ex post facto claim unless the party challenging the statute comes forward with the "clearest proof" that the effect of the statute is "so punitive . . . as to negate the State's intention to deem it civil." *Id*.

Neville's arguments regarding the punitive nature of the parole statute rest on the fact that his inability to be released on electronic monitoring punishes him because it results in his

continued incarceration. The court fully appreciates Neville's dissatisfaction with his inability to find a host site that will allow him to be released with electronic monitoring. Nevertheless, the result of Neville's inability to satisfy the applicable parole conditions does not transform those conditions into punitive measures because "the purpose of electronic monitoring [is] not to punish . . . but to foster [the inmate's] return to society through a supervised transition from prison life." *Hadley v. Montes*, 379 Ill.App.3d 405, 478 (4th Dist. 2008) (rejecting ex post facto challenge to 730 ILCS § 5/3-3-7(b-1)(6) and Illinois' Electronic Home Detention Law ); *see also Taylor v. Remmers*, No. 01 C 5134, 2002 WL 554520 (N.D. Ill. Apr. 12, 2002) ("supervised release easily encompasses the concept of electronic home detention, even if the technology to support that form of monitoring did not widely exist at the time the plaintiff committed the crime for which he was sentenced," electronic monitoring furthers 730 ILCS § 5/3-3-7(a)'s goal of helping subjects lead law-abiding lives, and electronic monitoring is not punitive). Thus, the court finds that the express requirement of electronic monitoring for sex offenders is not punitive.

### 3. Discretionary Parole Guidelines That Are Meant to Protect Society and Rehabilitate Offenders Do Not Violate the Ex Post Facto Clause

"Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account." *Garner v. Jones*, 529 U.S. at 250. Thus, the reach of the ex post facto clause "turns on the operation of the [challenged statute] within the whole context of [the State's] parole system." *Id*. at 252. Where parole decisions are based on an informed exercise of discretion, there can be no ex post facto violation, even if a

decision regarding parole eligibility rests on factors that were not used at the time of the underlying criminal offense. *See id*. at 253 ("where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions").

Illinois law grants the Board broad authority to create and impose special conditions on MSR terms. *See* § 730 ILCS 5/3-3-7(a) ("The conditions of parole or mandatory supervised release shall be such as the Prisoner Review Board deems necessary to assist the subject in leading a law-abiding life"); *see also Hanrahan v. Williams*, 673 N.E.2d 251, 255-56 (1996) ("the legislature, in drafting the [parole statute], intended the Board to have complete discretion in determining whether to grant parole when the denial of parole is not mandated by statute"). Because the Board exercised discretion to protect the public and to further the statutory goal of helping Neville transition back to society, the electronic monitoring requirement respects the prohibition on ex post facto legislation. *See Hadley v. Montes*, 379 Ill.App.3d at 478.

Accordingly, the court finds that the electronic monitoring condition represents an informed exercise of discretion meant to rehabilitate and protect. This, coupled with the non-punitive nature of the statute, means that the state court reasonably applied Supreme Court precedent when it concluded that the Board's imposition of electronic monitoring as a condition of MSR was constitutional. Neville's ex post facto claim, therefore, does not entitle him to relief under § 2254.

### III. Conclusion

The court fully appreciates Neville's very understandable frustration with his continued incarceration, despite the fact that he has served his determinate sentence. Nevertheless, the Board was constitutionally entitled to impose the conditions of MSR at issue in this case. Thus, Neville is not entitled to relief under § 2254. His federal habeas petition is, therefore, denied and all pending motions are stricken as moot. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

DATE:  January 30, 2009                                 _____
                                                        Blanche M. Manning
                                                        United States District Judge